Ramone ERVIN, Plaintiff–Appellant,

v.

Dick BUSBY, Sheriff, Crittenden County, Arkansas, Defendant–Appellee.

No. 92–2947.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1993.

Decided April 22, 1993.

148

---

Howard B. Eisenberg, Little Rock, AR, for plaintiff-appellant.

Joe M. Rogers, West Memphis, AR, for defendant-appellee.

Before FAGG, Circuit Judge, PECK,* Senior Circuit Judge, and MAGILL, Circuit Judge.

---

* The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

PER CURIAM.

Ramone Ervin appeals from the district court's[1] dismissal of his § 1983 action. For the reasons stated below, we affirm.

## I. FACTS

On September 12, 1990, Appellant Ramone Ervin was arrested for capital murder and placed in the Crittenden County Jail in Marion, Arkansas pending trial. In April or May 1991, Ervin complained of nightmares and sleep difficulties to Dr. Roy Denton, the physician for the jail. Dr. Denton diagnosed Ervin with situational depression and prescribed the antidepressant Elavil. The medication alleviated Ervin's sleep problems. The prescription was filled in May, June, and July.

On July 20, 1991, Ervin was involved in a fight at the jail. As a result, he was placed in isolation. On July 22, 1991, Ervin and two other inmates flooded the isolation cells. That same day, Ervin was transferred without notice or consent to the St. Francis County Jail approximately forty-five miles from the Crittenden County Jail. Due to persistent overcrowding, Crittenden County had an agreement with St. Francis County to house up to twenty-five prisoners from Crittenden County.

During his first night in the St. Francis County Jail, Ervin complained that his medication had not been transferred with him. The next day, Ervin's mother or a deputy brought the Mylanta II which Ervin was taking for his stomach, but the Elavil did not arrive. Subsequently, Ervin became agitated, smashed lamps, made weapons, and incited a riot. Crittenden County retained responsibility for Ervin's non-emergency medical needs. Sometime between July 22 and August 5, 1991, Crittenden County officials were notified by St. Francis County that Ervin wanted his Elavil. A Crittenden County Jail official made an appointment for Ervin at a mental health center and Ervin resumed taking Elavil on August 27, 1991.

On September 5, 1991, Ervin filed a *pro se* action alleging that his constitutional rights had been violated when he was transferred from the Crittenden County Jail without his medication. The district court appointed counsel for Ervin and a hearing was held before a magistrate in May 1992. The magistrate recommended that the action be dismissed. The district court adopted the magistrate's findings and recommendations and dismissed the action with prejudice. This appeal followed.

## II. TRANSFER

Ervin first argues that he was denied due process of law when he was transferred from Crittenden County to St. Francis County. He argues that the transfer worked a hardship on him because it required a toll call to reach his family and attorney from St. Francis, County, whereas it was a local call from Crittenden County. He complains that he had to resort to talking with his mother and having her visit the attorney. Ervin asserts that he had a constitutionally protected liberty interest in remaining in the Crittenden County Jail. *See, Cobb v. Aytch,* 643 F.2d 946 (3rd Cir.1981) (*en banc*) (pretrial detainees' liberty interests in effective assistance of counsel and speedy trial were infringed by transfers to jails up to 300 miles away from original detention site).

Ervin also argues that he has a liberty interest based in state law. For this proposition, he relies on Ark.Code Ann. § 12–41–509(a)(1) which provides:

> The sheriff of any county in this state, where there is no jail or the jail of the county is insufficient, may commit any person in his custody, either on criminal or civil process, to the nearest jail in some other county in the same judicial district.

Ervin notes that St. Francis County Jail is in a different judicial district than Crittenden County.

The Supreme Court has ruled that the due process clause does not in itself protect a convicted prisoner from transfer between jails in the state prison systems. *Meachum v. Fano,* 427 U.S. 215, 225, 96

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Similarly, the due process clause is not implicated when a pretrial detainee is transferred from one prison to another. *See, Covino v. Vermont Dept. of Corrections*, 933 F.2d 128, 130 (2d Cir.1991). However, a detainee's constitutional rights may be infringed where the transfer interferes with his right to assistance of counsel, *id.;* the state has created a liberty interest in remaining in a particular facility, *Cooper v. Elrod*, 622 F.Supp. 373, 377 (D.C.Ill.1985); or the nature and duration of the new form of incarceration exceeds the original purpose for which he was detained, *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).

■ With regard to Ervin's access to counsel after the transfer, we note that evidence of actual prejudice is necessary to show interference with the right to counsel. *United States v. Lyons*, 898 F.2d 210, 216 n. 6 (1st Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). In his brief, Ervin admits that he adduced no evidence of prejudice. Furthermore, as the magistrate noted, there does not appear to be a problem with quality of representation because Ervin's counsel was able to negotiate a plea to second degree murder, pursuant to which he is now serving the sentence imposed.

■ With regard to Ervin's second contention, we note that state law can create a liberty interest where mandatory language limits prison officials' discretion. *Stewart v. McManus*, 924 F.2d 138, 141 (8th Cir.1991). The statute in issue here does not contain mandatory language. Thus we conclude that it does not create a protectable liberty interest.

## III. MEDICAL NEEDS

■ Next, Ervin argues that his right to adequate medical care was violated when he was denied his anti-depressant medication between July 22 and August 27. Claims of inadequate medical care by convicted prisoners are analyzed under the eighth amendment and must evidence deliberate indifference by prison officials to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, punishment of a detainee prior to an adjudication of guilt constitutes a violation of due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Thus, as a pretrial detainee, Ervin's claim is analyzed under the due process clause of the fourteenth amendment rather than the eighth amendment. *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir.1989). Although this court has suggested that a more stringent standard than deliberate indifference would be appropriate in assessing pretrial detainees' claims of inadequate medical care, no standard has been clearly established. *Id.* at 1055 n. 8; *Boswell v. Sherburne County*, 849 F.2d 1117, 1121 (8th Cir.1988) (noting a split in the circuits, but declining to announce a different standard for pretrial detainees in the Eighth Circuit). In *Johnson–El, supra*, this court used the deliberate indifference standard in analyzing pretrial detainees' claims of inadequate medical care. Most other courts that have addressed the issue have applied the deliberate indifference standard to pretrial detainees. *E.g., Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir.1989); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986); *Whisenant v. Yuam*, 739 F.2d 160, 163 n. 4 (4th Cir.1984); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985). *Contra, Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir.1987) (pretrial detainees entitled to "reasonable medical care" unless the failure to supply it is reasonably related to a legitimate governmental objective). In accordance with precedent in this circuit, we analyze Ervin's claim under the deliberate indifference standard.

■ Ervin merely complains that he was without a prescription for an anti-depressant for approximately a month. He suggests that the sudden withdrawal of the medication caused his agitated behavior and resulted in another felony conviction for inciting a riot. However, Dr. Denton testified that he would not expect a patient with Ervin's history and symptoms to experience any undue agitation when the medication was suddenly stopped. Ervin testified that his nightmares returned, but his testimony was not corroborated by any jail personnel. We agree with the dis-

trict court's conclusion that the Crittenden County officials may have been negligent in misplacing Ervin's medicine and delaying a month in getting the prescription refilled. However, negligence is not sufficient to support a § 1983 claim. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Accordingly, we affirm the district court's dismissal of this case.