UNITED STATES, Appellee

v.

David M. BROOKS, Lance Corporal
U.S. Marine Corps, Appellant

No. 07-0639

Crim. App. No. 200501266

United States Court of Appeals for the Armed Forces

Argued February 4, 2008

Decided May 1, 2008

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.

<u>Counsel</u>

For Appellant:  Lieutenant Heather L. Cassidy, JAGC, USN
(argued); Lieutenant Richard H. McWilliams, JAGC, USN.


For Appellee:  Captain James W. Weirick, USMC (argued);
Commander Paul C. LeBlanc, JAGC, USN, and Lieutenant Derek D.
Butler, JAGC, USN (on brief); Major Brian K. Keller, USMC.


Military Judges:  Jeffrey P. Colwell, M. H. Sitler, and M. J.
Griffith


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge STUCKY delivered the opinion of the Court.

We granted review in this case to decide whether brig personnel violated Appellant's Sixth Amendment right to appellate counsel by monitoring his telephone conversations with his appellate counsel and by seizing his privileged correspondence. We hold that, even assuming some interference with his attorney-client relationship, Appellant failed to articulate or show any prejudice, and affirm.

I.

Appellant pled guilty at a general court-martial to failing to obey a restriction order, obstruction of justice, and adultery. Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934 (2000). Contrary to Appellant's pleas, the military judge also found Appellant guilty of assault, obstructing justice, and unlawful entry. Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934 (2000). The convening authority approved the adjudged sentence -- a dishonorable discharge, confinement for ninety-three months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed. United States v. Brooks, NMCCA No. 200501266, 2007 CCA LEXIS 166, at *26, 2007 WL 1704348, at *8 (N-M. Ct. Crim. App. May 16, 2007).

2

## II.

After trial, Appellant was confined in the brig at Camp Lejeune.  On May 3, 2006, Appellant's appellate counsel e-mailed brig officials, relaying Appellant's complaints that brig officials (1) stood so close to him during his telephone conversations with his appellate counsel that they could overhear what he was saying, and (2) seized a copy of a brig regulation sent to him by his appellate counsel.  The brig officer admitted that the monitors were in the room when a prisoner was using the telephone, but denied that they were so close as to overhear Appellant's conversations with his attorney.  The brig officer also informed defense counsel that the brig regulation was confiscated because it "contain[ed] sensitive information concerning Brig Operations" such that "it [wa]s considered contraband and [wa]s unauthorized."

On May 13, 2006, Appellant filed a complaint pursuant to Article 138, UCMJ, 10 U.S.C. § 938 (2000), that included concerns about brig personnel listening to his telephone conversations with his attorney, restricting the number of calls he could place to his attorney, and opening and reading his attorney-client privileged mail.  After speaking with the commanding officer, Appellant withdrew this complaint based on assurances that the command would address Appellant's concerns.

Appellant filed another complaint in September 2007 that included allegations that his privileged correspondence was being unlawfully opened and read, but did not repeat the prior allegation that his phone conversations were being improperly monitored.[1] Pursuant to a November 2007 formal investigation, the investigating officer found that Appellant's privileged correspondence had been restricted three times in 2007 for mailing or attempting to mail out contraband.[2] He also found that all of Appellant's incoming and outgoing privileged correspondence had been delivered, although one piece of incoming privileged correspondence had been received at the brig unsealed. He concluded that the brig properly handled prisoner privileged correspondence and that the restrictions on Appellant's privileged correspondence accorded with applicable directives.[3]

---

[1] Nevertheless, during the resulting Commander's Investigation, Appellant mentioned in passing that he felt he could not "effectively communicate with lawyers (civilian and military appellate), even over the phone."

[2] Appellant was alleged to have mailed white powder, dust, dirt, lint, and hair to the Commandant of the Marine Corps and to have attempted to mail white powder and dirt to his appellate defense counsel.

[3] At oral argument, Appellant's counsel stated that there was no evidence that the Government had interfered with Appellant's communications after the case was docketed at this Court. We now grant her February 15, 2008, motion to correct errata in which she explained that Appellant's June 18, 2007, affidavit and the November 8, 2007, Command Investigation contain assertions of interference with attorney-client communications.

III.

Appellant raised the same issue concerning the denial of his right to appellate counsel at the court below.  The NMCCA found the issue unripe for review "in that the appellant has failed to exhaust his available administrative remedies." Brooks, 2007 CCA LEXIS 166, at *25, 2007 WL 1704348, at *7.  The court opined that even if Appellant had overcome the ripeness problem, "the evidence before us fails to show how the alleged improper brig practices have negatively impacted the appellant's ability to actively participate with his appellate counsel in the appellate process."  Id. at *25, 2007 WL 1704348, at *7.

Appellant alleges that the ability of brig personnel to overhear his telephone conversations with his appellate counsel chilled his attorney-client communications and, thus, deprived him of his Sixth Amendment right to counsel.  Claiming structural error, he asks this Court to set aside the lower court's decision and order the NMCCA to conduct another review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).  Instead, we affirm the lower court's decision.  Any error was not structural and Appellant failed to show prejudice.

IV.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  The Supreme Court has extended the right

to counsel to first appeals guaranteed as a matter of right. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). In military jurisprudence, "[a]n accused has the right to effective representation by counsel through the entire period of review following trial, including representation before the Court of Criminal Appeals and [this] Court by appellate counsel appointed under Article 70, UCMJ, 10 U.S.C. § 870 (2000)." Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37 (C.A.A.F. 2003); accord United States v. Adams, 59 M.J. 367, 370 (C.A.A.F. 2004). Necessarily included in the Sixth Amendment right to counsel is the right of an accused to confer privately with his attorney. United States v. Godshalk, 44 M.J. 487, 490 (C.A.A.F. 1996); see Geders v. United States, 425 U.S. 80, 88-91 (1976) (holding that, by sequestering the accused from his attorney for seventeen hours during an overnight recess of the trial, the trial court impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment).

Not all impingements on attorney-client communication constitute per se violations of the Sixth Amendment right to counsel thereby requiring reversal. See United States v. Pinson, 56 M.J. 489, 492 (C.A.A.F. 2002) (citing Weatherford v. Bursey, 429 U.S. 545 (1977)). Per se violations are limited to "structural errors" and require no proof of prejudice for reversal. "Structural errors involve errors in the trial

6

mechanism" so serious that "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). They are not amenable to harmless error review and will always result in reversal if properly preserved for appeal. Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993). Generally, for all other errors, an appellant must show an effect on the proceedings or prejudice to substantial rights. Fulminante, 499 U.S. at 306. There is a "strong presumption" that an error is not structural. Rose v. Clark, 478 U.S. 570, 579 (1986), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Supreme Court has recognized two tests for structural error: (1) when a court is faced with "the difficulty of assessing the effect of the error," as in:

> Waller v. Georgia, 467 U.S. 39, 49 n.9 (1984) (violation of the public-trial guarantee is not subject to harmlessness review because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance"); Vasquez v. Hillery, 474 U.S. 254, 263 (1986) ("[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained").

United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2564 n.4 (2006) (holding denial of counsel of choice is not subject to harmless error analysis because of difficulty in assessing the

7

effect of the error in light of the many unquantifiable and indeterminate variables involved in representation); and (2) when harmlessness is irrelevant, as in McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984) ("Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis"). Gonzalez-Lopez, 126 S. Ct. at 2564 n.4

This case fits neither structural error category.  If an appellant thought he could not freely converse with counsel, he should be able to articulate with some specificity what he deleted from those communications.  An appellate court would then be able to assess the significance of the missing matter on the ability of counsel to defend the appellant.  Appellant's failure to do so does not render it impossible to assess prejudice as a matter of law in all cases; rather, his silence suggests that little, if anything, was chilled from Appellant's attorney-client conversations.  Similarly, a refusal to make certain undefined communications, especially when the appellant had ample alternative opportunities to speak freely with counsel, does not, as a general matter, constitute prejudice. While structural error might be present if Appellant was somehow completely deprived of all opportunities to speak with appellate counsel, that is not the case here.  See Johnson v. United

8

States, 520 U.S. 461, 468-69 (1997) (citing Gideon v.
Wainwright, 372 U.S. 335, 342-45 (1963) (holding that total
deprivation of the right to counsel at trial constitutes a
structural error and requires reversal).

Therefore, in this case, Appellant must show prejudice.
See United States v. Morrison, 449 U.S. 361, 365-66 (1981)
(limiting remedy, where government agents met with accused
without his defense counsel's knowledge or permission, to
"denying the prosecution the fruits of its transgression");
Weatherford, 429 U.S. at 557-58 (declining to apply per se error
standard to undercover agent's presence during attorney-client
communications); Williams v. Woodford, 306 F.3d 665, 683 (9th
Cir. 2002) (holding that "[w]hen the government deliberately
interferes with the confidential relationship between a criminal
defendant and defense counsel [by disparaging that counsel in
front of the defendant], that interference violates the Sixth
Amendment right to counsel if it substantially prejudices the
criminal defendant.  Substantial prejudice results from the
introduction of evidence gained through the interference against
the defendant at trial, from the prosecution's use of
confidential information pertaining to defense plans and
strategy, and from other actions designed to give the
prosecution an unfair advantage at trial") (citations omitted);
Ervin v. Busby, 992 F.2d 147, 150 (8th Cir. 1993) (requiring a

prejudice showing where inmate's transfer to a more distant detention facility resulted in his having to make a toll call to his attorney where only a local call had been needed prior to the transfer).

After all, "[n]ot all government interference with the attorney-client relationship renders counsel's assistance so ineffective as to violate a defendant's sixth amendment right to counsel."  Hall v. Iowa, 705 F.2d 283, 290 (8th Cir. 1983) (holding that police obtaining consent to search without contacting accused's counsel did not amount to violation of the Sixth Amendment right to counsel when the police could have seized the evidence anyway) (citations omitted); accord United States v. Chavez, 902 F.2d 259, 266-67 (4th Cir. 1990) (holding that agent's failure to terminate conversations initiated by an accused without the knowledge of his attorney did not rise to a constitutionally impermissible invasion into the attorney-client relationship -- some showing of prejudice is required).

Even assuming the Government interfered with Appellant's right to counsel by allowing brig personnel to be present during attorney-client telephone conversations and seizing the brig regulation, Appellant has not cited, and the record fails to establish, how he was prejudiced -- namely, what issues he wanted to raise before the NMCCA but was unable to do so because

of the chilling effect the brig officials' actions had on his attorney-client communications.

This should not be taken to confer upon confinement facility officials carte blanche to eavesdrop upon confidential communications between attorney and client, beyond what is strictly necessary to maintain the order and safety of the institution. While we are not, and do not intend to be, overseers of the day-to-day operations of such facilities, a case in which an appellant can articulate particularized prejudice (let alone one in which the fruits of such eavesdropping were used at trial) would raise far more acute issues. This, however, is not such a case.

V.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.