Stephanie DORAN, Melanie Erin Doran, Justin Michael Doran, and Elsa Louise Doran, By and Through Their Mother, Stephanie Doran, Plaintiffs,

v.

Patrick F. CONDON, Deputy Lancaster County Attorney; Robert Thorson, Sergeant, Nebraska State Patrol; Todd Kinghorn, Investigator, Nebraska State Patrol; Kevin Knorr, Investigator, Nebraska State Patrol; Dan Doggett, Investigator, Nebraska State Patrol; Jud McKinstry, Investigator, Nebraska State Patrol, et al., Defendants.

No. 4:CV97–3173.

United States District Court,
D. Nebraska.

May 26, 1998.

Joy Shiffermiller, Polsky, Cope, Knapp & Shiffermiller, Lincoln, NE, for Plaintiffs.

Michael E. Thew, Deputy Lancaster County Attorney, Lincoln, NE, for Defendant Condon.

Don Stenberg, Attorney General, Hobert B. Rupe, Asst. Atty. Gen., Lincoln, NE, for Defendants Thorson, Kinghorn, Knorr, Doggett, and McKinstry.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Patrick F. Condon (Condon), Robert Thorson (Thorson), Todd Kinghorn (Kinghorn), Kevin Knorr (Knorr), Dan Doggett (Doggett) and Jud McKinstry (McKinstry) have filed motions for summary judgment raising the defense of qualified immunity from suit. Stephanie Doran (S. Doran) for herself and her children makes the following claims: (1) Condon, Kinghorn and Thorson caused a warrant to be issued without probable cause directed to the home where S. Doran and her children resided; (2) Condon, Kinghorn and Thorson caused an unreasonable seizure of S. Doran because the search warrant was invalid and thus law enforcement officers had no right to be in her home; (3) Condon and Kinghorn caused an unreasonable search of S. Doran's home because the search warrant was invalid and thus law enforcement officers had no right to be in her home; (4) Knorr, Doggett and McKinstry should have known that the warrant they executed on S. Doran's home was invalid and therefore the search of her home by these officers and the seizure of S. Doran with the aid of these officers was unreasonable; (5) Kinghorn, Thorson, Knorr, Doggett and McKinstry used excessive force in carrying out the search of S. Doran's home; (6) Kinghorn and Thorson used excessive force in seizing S. Doran. (Filing 1 (Counts I through VI).)

I will grant the motions as to Counts I through IV. I will deny the motions as to Counts V and VI. My reasons for this decision are set forth below.

### I.

The material undisputed facts are these:

1. S. Doran, and her children, are the wife and children of Michael Doran (M. Doran). They resided at 3401 Woods Avenue in Lincoln, Nebraska (Lincoln address).

2. On August 17, 1994, an express mail package, addressed to M. Doran at the Lincoln address, was observed in the mail

stream by agents of the U.S. Postal Service. Because the package fit a profile for narcotics packages, the postal service agents removed it from the mail stream and presented the package to a drug dog. Among other things, the express package had a fictitious return address in Florida. The drug dog did not "alert" to the package, and so the agents returned it to the mail stream.

3. On September 9, 1994, a postal inspector observed another express package addressed to M. Doran to fit the narcotics package profile. This package was addressed to M. Doran at P.O. Box 231, South Bend, Nebraska (South Bend address). This package also fit the profile and contained another fictitious address in Florida. It was removed from the mail stream, and the package was presented to a drug dog. This time the drug dog "alerted" to the package. Based upon this information, a postal inspector sought and obtained a federal warrant for the package. The warrant was issued and a search of the package revealed 41 grams of methamphetamine packaged in three bags.

4. The postal inspector contacted the Nebraska State Patrol and informed them of these two packages. The authorities decided to set up a controlled delivery of this most recent package; that is, they agreed to deliver the package to the Post Office in South Bend, Nebraska; to allow M. Doran to pick it up; to follow M. Doran to his ultimate destination; and then to serve a search warrant, seize the drugs, and take M. Doran into custody at that location. In preparing for this plan, the authorities learned that M. Doran had an ownership interest in the South Bend address and the Lincoln address. The South Bend address was located on a lake. The officers believed the South Bend address was a seasonal or vacation dwelling and the Lincoln address was a permanent home. Because of this information, the officers prepared to obtain two search warrants.

5. On September 12, 1994, a postal inspector delivered the package to the Post Office in South Bend, Nebraska. At the request of authorities, the Postmaster tried to call M. Doran at the South Bend address. However, the Postmaster was unsuccessful. Checking a "blue book" for lake residents, the Postmaster learned that M. Doran's permanent address was listed as the Lincoln address and the Postmaster learned the telephone number at the address. The Postmaster called the number, reached M. Doran at the Lincoln address, and M. Doran agreed to pick up the package shortly after 3:00 p.m. that day.

6. The authorities then set in motion efforts to obtain search warrants at both locations. A highway patrol sergeant from Omaha, Nebraska, called Thorson in Lincoln and informed him of the facts and the plan for the controlled delivery. Given the possibility that M. Doran might return to the Lincoln address, plans were set in motion to prepare an affidavit for search of the Lincoln address. Thorson, a sergeant, assigned that task to Kinghorn and Knorr, investigators for the highway patrol.

7. Kinghorn and Knorr checked the records, including the tax assessor's records, utility records, motor vehicle records, and criminal history records, and satisfied themselves that M. Doran owned and occupied the Lincoln address. They also concluded that the South Bend address was a vacation home only, and not M. Doran's permanent home.

8. Kinghorn began drafting an affidavit for search of the Lincoln address, doing so under the assumption that M. Doran would return to the Lincoln address with the package. After preparing a draft on a computer disk, Kinghorn went to the Lancaster County Attorney's office and meet with Condon, a deputy county attorney. Kinghorn arrived between 1:30 p.m. and 2:30 p.m. After discussing the matter with Kinghorn and reviewing the draft of the affidavit, Condon called a judge and asked the judge to remain available for the issuance of a warrant. The judge initially agreed to remain available, but called back at 4:30 p.m. and stated that he would only be available until between 5:00 p.m. and 5:15 p.m. Condon then made arrangements to meet with the judge at 5:00 p.m.

9. At 3:15 p.m. M. Doran picked up the package and went to the South Bend address. Shortly after his arrival, authorities executed a warrant at the South Bend ad-

dress and arrested M. Doran and two other people. They seized the package at that address. At 4:30 p.m. Thorson called the Lancaster County Attorney's office and informed Kinghorn and Condon of what had happened.

10. Although the package had been seized at the South Bend address, Condon and Kinghorn decided to apply for a warrant at the Lincoln address. They knew that they had only about a half hour to make the appropriate changes in the affidavit because it was 4:30 p.m. and the judge was leaving at 5:00 p.m. After they hurriedly made the changes, Kinghorn signed the affidavit. They removed from the original affidavit allegations that the package had been delivered to the Lincoln address, and instead inserted the following:

> On September 12, 1994, Michael Doran was observed to arrive at the Post Office in South Bend, Nebraska. Surveillance officers observed Michael Doran to pickup the suspect package. He then exited the Post Office and entered a vehicle and depart[ed]. Surveillance officers followed Michael Doran in a vehicle as he drove from the Post Office in South Bend to a residence in South Bend where he was arrested along with two other individuals.

> Further your affiant believes that from his experience that persons engag[ing] in the business of drug distribution commonly keep records of said distribution, including but not limited to, list[s] of clients, telephone numbers and United States currency, at locations other than where the narcotics are kept.

(Filing 26, Ex. 2.)

11. Immediately preceding this language, Kinghorn stated in his affidavit that: (a) on August 17, 1994, an express mail package, which fit a narcotic profile, weighing about 3 pounds, was sent to M. Doran at the Lincoln address and the package had a return address of Richard Bennet in Miami, Florida; (b) the affiant was informed that there is no Richard Bennet at that address; (c) the August 17 package was presented to a drug dog

but the dog did not alert to the package; (d) on September 9, 1994, another express mail package bearing another fictitious return address in Florida was removed from the mail; (e) the September 9 package was addressed to M. Doran at the South Bend address; (f) a drug dog alerted to this package; (g) a federal magistrate issued a warrant for the package; (h) the affiant was advised the package contained 41 grams of methamphetamine contained inside three clear plastic bags; (i) the affiant was informed that a check of utility records showed that M. Doran owned the Lincoln address and the utilities at that address were registered to him.

12. Condon then presented the affidavit to the judge, and the judge issued the warrant shortly after 5:00 p.m.

13. Despite these other changes they made to the affidavit, Condon and Kinghorn failed to remove from the list of items to be seized at the Lincoln address a description of the package they knew to have been seized at the South Bend address. As a result, this package was also listed in the warrant itself along with other items.

14. At 6:50 p.m. the warrant was served at the Lincoln address and officers seized drugs, paraphernalia, firearms, currency and financial records at the Lincoln address.

15. In her complaint, which defendants do not contest for purposes of these motions[1], S. Doran makes the following allegations:

a. On September 12, 1994, at approximately 6:50 p.m., Plaintiff was at her residence ... with her three children [ages 12 years to 6 months]. Plaintiff answered a knock at the side door of her home to discover three uniformed officers, whom have later been identified through officer reports as Sergeant Robert Thorson, Investigator Todd Kinghorn, and one other unknown Investigator, all of the Nebraska State Patrol.

b. Sergeant Thorson demanded admittance to the home for him and the ten to twelve officers that accompanied him, for purposes of carrying out a search of the

---

1. "[F]or the limited purpose of this Motion for Summary Judgment[,] the facts pled in the Complaint (Counts 5 & 6) will be used to analyze the issues." (Br. Supp. Defs. Thorson, Kinghorn, Knorr, Doggett, and McKinstry's Mot. Summ. J. at 29.)

home for contraband. He claimed that the search was commanded by a warrant that was located in his patrol car. However, he refused to present Plaintiff with a copy when she requested it, and instead repeatedly commanded her to open the door. c. When Plaintiff repeatedly refused to open the side door for the officers without the presentation of a warrant, Investigator Jud McKinstry, who had been stationed at the back door to the home, forced his entry into the back door and into the family room, where Plaintiff's three children were watching television. The other officers followed him into the home through that back door, all of them with their guns drawn. d. The children became extremely frightened at the sight of the officers entering their home without permission, with their guns drawn. At the sound of their cries, Plaintiff attempted to go to the children to comfort them. However, Sergeant Thorson detained her in the kitchen area until she managed to break free from his grasp. e. As Plaintiff ran down the hall to go to her children, Thorson and Kinghorn tackled her from behind and handcuffed her. She was allowed to be in the family room with her children only until they were taken by their paternal grandmother, and she was transported to the Lancaster County Correctional Facility. She was detained in jail for three days.

(Filing 1 ¶¶ 29–33.) The plaintiffs further allege that they have not been able to return to their home, the children have not been able to return to their school, and that all of them have incurred medical expenses for their psychological treatment as a result of the traumatic nature of the force used to effectuate the search. (Filing 1 ¶ 39.)

16. The complaint does not allege any damage to the home or physical injury to any of the plaintiffs.

17. M. Doran was indicted on federal drug charges. He moved to suppress the searches of the two residences. A federal magistrate issued a report and recommendation suggesting that the fruits of the search at the South Bend address should not suppressed, but the fruits of the search of the Lincoln address should be suppressed.

18. At the hearing on the motion to suppress, M. Doran testified that he was estranged from his wife and resided at the South Bend address. However, he admitted that much of his property was at the Lincoln address and he also admitted that he stopped at the Lincoln address frequently to see his wife and children.

19. At the hearing Condon also testified. He stated that he believed that probable cause existed for the search of the Lincoln address although the package had been seized at the South Bend address. He stated that he was aware of at least five similar cases where courts had issued warrants authorizing the search of property separate from the property at which drugs had been delivered.

20. As to the search of the Lincoln address, the magistrate judge reasoned that the warrant was invalid because it contained various material false statements or omissions, the statements and omissions were recklessly made, and, if the affidavit was corrected to cure the statements or omissions, then the affidavit failed to establish probable cause. The magistrate believed the following statements or omissions were false and misleading: (a) the statement that M. Doran was "occup[ying]" rather than merely using the Lincoln address; (b) the omission to state explicitly that the package had been seized at the South Bend address; (c) the statement that the South Bend residence was "a residence" and not "defendant's residence"; and (d) the statement that the package would be found at the Lincoln address.

21. Both M. Doran and the government objected to the report and recommendation. However, the case against M. Doran was dismissed upon motion of the government before the recommendation was considered by the court.

**II.**

Government officials, like prosecutors or police officers, who are sued for damages in their individual capacities under 42 U.S.C. § 1983 for their performance of discretionary functions are entitled to a qualified immunity

defense if they prove that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is a question of law. To avoid subjecting officials to the distraction and deterrence of unnecessary trials, the Supreme Court has emphasized that summary judgment should be granted to a § 1983 defendant on qualified immunity grounds " 'if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact ... violated clearly established law.' " *Johnson v. Boreani,* 946 F.2d 67, 69–70 (8th Cir.1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

 Resolution of the qualified immunity defense in the summary judgment context requires a step-by-step analysis. *Cross v. City of Des Moines,* 965 F.2d 629, 631–33 (8th Cir.1992) (reversing decision denying motion for summary judgment on qualified immunity grounds where police officers entered a woman's apartment in an attempt to find her husband who was the subject of an arrest warrant). First, the court must determine whether the plaintiff has alleged the violation of a constitutional right. *Id.* Second, the court must determine whether the right was "clearly established" at the time of the alleged violation. *Id.* Third, if the constitutional right was clearly established, the court must determine whether there are material facts in dispute regarding the objective reasonableness of the defendant's conduct in light of the law and the facts known to the defendant at the time. *Id.* Lastly, if the facts are undisputed, and the defendant could be found to have acted reasonably if the conduct is viewed objectively, then summary judgment must be granted for the defendant. *Id.*

 For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing is a violation of that right. Although the defen-

dant bears the initial burden of coming forward with facts to suggest he was acting within the scope of his discretionary authority, the plaintiff must demonstrate that the law allegedly violated was clearly established. *Id.* If the plaintiff can show that the defendant's conduct as described by the plaintiff violated clearly established law, then it is the defendant's burden to demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant had at the time of his actions. *Id.*

### A. Count I

 The plaintiffs argue that Condon and Kinghorn violated clearly established constitutional law because they placed in the affidavit material facts that were false or misleading, they did so recklessly, and, when the affidavit is corrected, it fails to establish probable cause. Thus, the plaintiffs claim that their clearly established right to be free from an unlawful search and seizure under the Fourth Amendment was violated when Condon and Kinghorn jointly decided to draft and present the affidavit for search warrant to the judge. The plaintiffs apparently also claim that Thorson knew of the invalidity of the affidavit and thus he has no qualified immunity from suit because of that knowledge.[2]

### 1. Clearly Established Constitutional Right

I agree with the plaintiffs that they have alleged the violation of a constitutional right that was clearly established at the time Condon, Kinghorn and Thorson acted. The law was clearly established that the presentation of an affidavit for search warrant that contains materially false statements or omissions, knowingly or recklessly made in conscious disregard of the truth, violates the Fourth Amendment, when, if the affidavit is corrected to rectify the incorrect statements or omissions, no probable cause exists and a search warrant is issued because of the incor-

---

**2.** Because Thorson called the Lancaster County Attorney's office to report the result of the South Bend activity, I assume for purposes of the mo-

tion that Thorson knew what Condon and Kinghorn knew.

rect affidavit. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

If Condon and Kinghorn violated the clearly established *Franks* jurisprudence when they drafted and submitted the affidavit, then they could not have objectively believed the warrant was issued upon probable cause and a reasonable prosecutor and law enforcement officer would not have decided to seek a warrant. *Compare Kohl v. Casson,* 5 F.3d 1141, 1146–47 (8th Cir.1993) (holding that a motion to dismiss on qualified immunity grounds should have been granted in favor of county attorney and law enforcement officer who jointly drafted and presented affidavit for arrest warrant to judge; stating that " '[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer [or prosecutor] had an objectively reasonable belief that it established probable cause." ') (quoting *Thompson v. Reuting,* 968 F.2d 756, 760 (8th Cir.1992)) (brackets in *Kohl* ).[3] Likewise, if Thorson knew of the invalidity of the affidavit, then Thorson violated the clearly established constitutional rights of the plaintiffs when he executed the warrant because he could not have objectively believed that the warrant was issued upon probable cause. *Id.*

### 2. Objectively Reasonable Conduct

I find and conclude that no material facts are genuinely in dispute concerning the objective reasonableness of the defendants' actions, and Condon, Kinghorn and Thorson are entitled to judgment as a matter of law. Their conduct was objectively reasonable regarding the drafting and submission of the affidavit and subsequent reliance upon the warrant. The following explains my reasons for this decision.

### (a) Reliance on Warrant

If they did not violate *Franks,* Condon, Kinghorn and Thorson (and all the other officers) had a right to rely on the issuance of the warrant unless it is shown "that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). This is true even if

no probable cause actually existed since the question for qualified immunity purposes is not whether the judge was correct in assessing the question of probable cause, but whether the officers could have objectively believed that probable cause existed. *Id. See also Kohl v. Casson,* 5 F.3d at 1146–47.

Assuming the warrant affidavit did not violate *Franks,* I conclude that "officers of reasonable competence could disagree" on whether the warrant should issue, and therefore "immunity should be recognized." *Malley,* 475 U.S. at 341, 106 S.Ct. 1092. Condon, Kinghorn and Thorson knew, and the affidavit accurately recited, that:

(1) M. Doran had recently been the addressee of a suspicious express mail package mailed to the Lincoln address.

(2) This first package contained a fictitious Florida return address and fit a postal inspection service profile for drugs, although a drug dog did not alert to the package.

(3) A second express mail package was addressed to M. Doran at the South Bend address and it also bore a fictitious Florida return address and fit a postal inspection service profile for drugs.

(4) After a drug dog alerted to the second package and a search warrant for the package was issued, the second package was found to contain methamphetamine.

(5) The methamphetamine was separately packaged as if for sale.

(6) After a controlled delivery of the package to M. Doran, he was arrested at the South Bend address.

(7) M. Doran held some type of interest in the Lincoln address, as shown by the fact that the utilities were registered to him and he was the addressee on the first suspicious package that was mailed to the Lincoln address.

(8) An experienced law enforcement officer knew from that prior experience that drug dealers "commonly keep" evidence of their drug dealings at addresses different from the one where drugs are found.

---

**3.** Condon has absolute immunity to the extent that he merely appeared before the issuing judge,

as opposed to advising Kinghorn on the drafting of the affidavit. *Kohl,* 5 F.3d at 1146.

In addition, and while not recited in the affidavit, the men also knew that M. Doran had been reached at the Lincoln address by the South Bend Postmaster to ask M. Doran to retrieve the second package.

Based upon these undisputed facts, I am convinced that reasonably competent police officers and prosecutors could objectively conclude that the issuance of the warrant for the Lincoln address was supported by sufficient probable cause to believe that evidence of a crime would be found at that address. *Cross*, 965 F.2d at 632 ("If a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed.") (emphasis in original). This being true, and assuming no violation of *Franks*, the qualified immunity defense must be sustained.

### (b) *Franks*

I am not persuaded that the defendants violated *Franks*. I have two reasons for this decision: (1) the alleged misstatements or omissions were not "material," *Franks*, 438 U.S. at 169 & 171–72, 98 S.Ct. 2674; (2) even if the alleged misstatements or omissions were material, the undisputed facts establish that the statements or omissions were not "deliberate falsehood[s] or [the product] of reckless disregard for the truth," but were the consequence of "negligence or innocent mistake." *Id.* at 171, 98 S.Ct. 2674.[4]

### (i) Materiality

A statement or omission is not "material" under *Franks* if, when the affidavit is corrected, it " 'sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place.' " *United States v. Clapp*, 46 F.3d 795, 801 (8th Cir.1995) (a search warrant affidavit was based in part upon an "interview;" no interview had taken place but officer had overheard conversation; officer incorrectly recited statements of the overheard party in the

affidavit; the court held that *Franks* was not violated because the "adjusted affidavit provides a substantial basis from which the issuing court could have determined probable cause") (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986) (in turn citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

The plaintiffs attack the following alleged misstatements in the affidavit: (a) the statement that M. Doran was "occup[ying]" rather than merely using the Lincoln address; (b) the failure to state explicitly that the package had been seized at the South Bend address; (c) the statement that the South Bend residence was "a residence" and not "defendant's residence;" (d) the statement that the package would be found at the Lincoln address. I am not persuaded that any of these alleged errors are "material."[5]

Despite the failure to explicitly tell the judge that the package had been seized at South Bend and despite the erroneous references to the package in the list of items to be seized at the Lincoln address, the issuing judge would have known the truth; that is, the issuing judge would have known from the affidavit that the package had been seized at the South Bend address and was not at the Lincoln address. The following undisputably truthful words from the affidavit compel this conclusion:

On September 12, 1994, Michael Doran was observed to arrive at the Post Office in South Bend, Nebraska. *Surveillance officers observed Michael Doran to pickup the suspect package.* He then exited the Post Office and entered a vehicle and depart[ed]. *Surveillance officers followed Michael Doran in a vehicle as he drove from the Post Office in South Bend to a residence in South Bend where he was arrested along with two other individuals.*

*Further your affiant believes that from his experience that persons engag[ing] in the business of drug distribution common-*

---

4. I am aware that a magistrate judge came to a different conclusion in a report and recommendation in M. Doran's criminal case. While I have carefully considered the magistrate judge's thoughtful recommendation, I am not persuaded by it.

5. When the alleged misstatements are not positively false, but rather are alleged to be misleading, "the affidavit is to be judged by in effect adding to the affidavit the information improperly omitted." 2 Wayne R. LaFave, *Search and Seizure* § 4.4(c), at 502 (1996) (citation omitted).

*ly keep records of said distribution,* including but not limited to, list[s] of clients, telephone numbers and United States currency, *at locations other than where the narcotics are kept.*

(Filing 26, Ex. 2) (emphasis added).)

Given these words, the failure to explicitly tell the judge that the package was seized in South Bend was not material.

In a similar vein, I fail to see the materiality of the alleged misstatement that M. Doran was "occup[ying]" the Lincoln address. To begin with, the statement appears to have been true. M. Doran testified at the suppression hearing that he kept his things at the Lincoln address and frequently visited his wife and children at that home. Indeed, the utilities at the Lincoln address were registered to him and the first suspicious package was sent to him at the Lincoln address. Moreover, if this "use" is not "occupation," and the affidavit must be corrected to show that M. Doran was "using," rather than "occupying," the Lincoln address, the affidavit still provides an objectively arguable basis for probable cause.

Likewise, the statement that the South Bend residence was "a residence" and not "defendant's residence" is not material. The affidavit as corrected would read as follows: (a) M. Doran maintained a residence at the South Bend address; (b) M. Doran and his wife also owned the Lincoln address; (c) the utilities at the Lincoln address were registered in M. Doran's name; and (d) the first suspicious package was addressed to M. Doran at the Lincoln address. If so corrected, the affidavit continues to provide a reasonable basis for probable cause.

In summary, because the misstatements were not material, *Franks* was not violated. Since they did not violate *Franks*, the defendants have qualified immunity.

### (ii) Disregard of the Truth

The Constitution does not guarantee that "every fact recited in the warrant affidavit is necessarily correct." *Franks,* 438 U.S. at 165, 98 S.Ct. 2674. Such an assumption would be unrealistic because, as this case proves, the facts stated in an affidavit for a search are frequently "garnered hastily."

*Id.* Rather, the Constitution requires that "the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

The undisputed facts establish that Condon and Kinghorn did not knowingly lie to the issuing judge. They made an editing mistake. While the affidavit was not as clear as it should have been, the lack of clarity was the product of the understandable haste associated with their effort to amend the affidavit to conform to the facts while still trying to meet the judge before he departed. The men had no more than a half hour to accomplish this task.

Under these circumstances, the most that can be said is that the defendants were negligent in their editing of the affidavit, and this is not enough. *Franks,* 438 U.S. at 171, 98 S.Ct. 2674 ("Allegations of negligence or innocent mistake are insufficient.") The test is "whether, viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Clapp,* 46 F.3d at 801 n. 6.

No reasonable finder of fact could conclude that the defendants (or objectively reasonable officers) "entertained serious doubts as to the truth" of the affidavit. Nor could such a fact finder conclude that the defendants had "obvious reasons to doubt the accuracy of the information." Once the men made the editing change, they believed (and an objectively reasonable officer could have believed) the information was accurate. The inadvertent failure to conform the rest of the affidavit to the editing changes does not alter the undisputed fact that the men were trying to express the truth as they knew it.

In summary, because the alleged editing errors relied upon by the plaintiffs were at most the product of negligence, *Franks* was not violated. Thus, the defendants are entitled to qualified immunity.

### B. Count II

S. Doran also alleges that Condon, Kinghorn and Thorson caused her to be seized in violation of the Fourth Amendment because the search warrant was invalid and

thus law enforcement officers had no right to be in her home. Given the foregoing findings, the defendants had a right to rely on the issuance of the warrant because a reasonable police officer could have believed that the warrant was based upon a sufficient showing of probable cause. *Cross,* 965 F.2d at 632 ("If a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed.") (emphasis in original).

To the extent that S. Doran claims that her seizure was invalid for some reason other than the invalidity of the search warrant, she has failed in "her burden" to "explain what clearly established right was violated as precisely and thoroughly as possible, including, especially, a discussion of the relevant cases . . . ." *Cross,* 965 F.2d at 633 n. 2.[6] Accordingly, I will pursue this claim no further.

### C. Count III

The plaintiffs allege that Condon and Kinghorn caused an unreasonable search of S. Doran's home because the search warrant was invalid and thus law enforcement officers had no right to be in her home. This claim is a restatement of the first claim, and summary judgment will be granted on this claim for the reasons stated earlier.

### D. Count IV

The plaintiffs allege that Knorr, Doggett and McKinstry should have known that the warrant they executed on S. Doran's home was invalid and therefore the search of her home by these officers and the seizure of S. Doran with the aid of these officers was unreasonable. Again, these defendants had a right to rely upon the warrant for the reasons stated earlier; that is, I am convinced that reasonably competent police officers could objectively conclude that the issuance of the warrant for the Lincoln address was supported by sufficient probable cause to believe that evidence of a crime would be found at that address. *Cross,* 965 F.2d at 632.

### E. Counts V and VI

 The plaintiffs argue that Kinghorn, Thorson, Knorr, Doggett and McKinstry used excessive force in carrying out the search of S. Doran's home. As I read Count V, it pertains to the armed entry into, and the "sweep" of, the home. Count VI, pertaining to Thorson and Kinghorn, relates to their subsequent restraint of S. Doran.

The plaintiffs assert that the defendants entered the home with their guns drawn and traversed the family room where the children were watching the television. S. Doran admits that she refused permission to search the home because Thorson would not show her the warrant. After this entry, the children became upset, and when S. Doran ran to comfort them, Thorson and Kinghorn tackled her and threw her to the ground. The plaintiffs allege that they have not been able to return to their home; the children have not been able to return to their school; and that all of them have incurred medical expenses for their psychological treatment. These events are the result of the trauma caused by the excessive use of force. The defendants assume these facts to be true, and so do I.

First, S. Doran and her children clearly had a right to be free from excessive force during the execution of a search warrant. *See, e.g., Dawkins v. Graham,* 50 F.3d 532, 535 (8th Cir.1995) (refusing to order summary judgment based on the qualified immunity defense where parents and children claimed state drug agents used excessive force during the 1991 execution of search warrant; the officers displayed guns and knocked one party to the ground.) Moreover, given the specific allegation of emotional suffering requiring medical treatment, I find and conclude that the plaintiffs have alleged sufficient injury. *Id.* (child suffered from posttraumatic stress disorder).

Second, I find and conclude that the undisputed facts presented in the plaintiffs' complaint establish that no objectively reasonable officer would have acted as the plaintiffs

---

**6.** In general, law enforcement officers may detain the occupant of a home while executing a search warrant for contraband. *See, e.g., Michi-* *gan v. Summers,* 452 U.S. 692, 704–05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

claim the defendants acted. Of course, it may be that other facts will prove the reasonableness of the defendants' actions. Nevertheless, since the defendants ask me to assume the truth of factual allegations in the complaint, and I have not the slightest explanation from the defendants about why an objectively reasonable police officer would have thought "guns and tackling" were necessary, I am not allowed to conjure up a factual basis to justify the defendants' actions. Briefly, my reasons for this decision are set forth below.

While the warrant called for the search of drugs, guns and other types of potentially dangerous contraband, the law officers knew that neither S. Doran nor her children were suspects. They also knew that M. Doran had been arrested and thus posed no danger to them. Indeed, there is no reason to believe that the law enforcement officers thought they were in any danger from S. Doran or her children, the only known occupants of the home. Furthermore, there is no evidence that the officers thought S. Doran or her children would destroy evidence. Still further, it is facially reasonable and proper for a mother to seek to comfort her young children when armed men enter the family home without permission and frighten the children. It is not obvious why a mother's natural reaction in seeking to comfort her children was properly met with physical violence. Also, the facts that I must rely upon do not show that S. Doran actively resisted the law enforcement officers. On the contrary, while she did not give permission to enter the home,[7] there is no evidence suggesting that she said or did anything that threatened any kind of physical resistance.

The Supreme Court has stated that the right to use force in the Fourth Amendment context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting ...." *Graham v. Connor*, 490 U.S. 386, 396,

109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Appreciating that I must not use "the 20/20 vision of hindsight" to judge the actions of the officers, *id.*, I nevertheless find no "objectively reasonable" explanation on this record to justify either the use of guns or the "tackling" of S. Doran.

In summary, objectively reasonable police officers would not have acted as the plaintiffs claim the defendants acted; that is, reasonable officers would not have entered a single-family home with guns drawn, displaying those guns to children as they watched television, simply because the children's mother, who was not a suspect, asked for a copy of the warrant before allowing entrance. Moreover, reasonable officers would not have "tackled" a mother who merely went to comfort her frightened children. Accordingly, the motion for summary judgment must be denied as to Counts V and VI.

IT IS ORDERED that:

1. Condon's motion for summary judgment (filing 25) is granted providing that he has qualified immunity from suit as to all counts of the complaint asserted against him.

2. Kinghorn, Thorson, Knorr, Doggett and McKinstry's motion for summary judgment (filing 29) is granted providing that they have qualified immunity from suit as to Counts I through IV of the complaint.

3. Kinghorn, Thorson, Knorr, Doggett and McKinstry's motion for summary judgment (filing 29) is denied regarding Counts V and VI of the complaint.

---

7. While S. Doran had no constitutional right to receive a copy of the warrant before the officers entered, from the perspective of the police "it may be foolhardy to proceed in the absence of the physical presence of the warrant ...." *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir.), *cert. denied*, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987).